**E-Filed 1/25/10**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TOYZ, INC., a California Limited Liability Company; ANTELOPE TOYZ, LLC, a California Limited Liability Company; WIRELESS, LLC, a California Limited Liability Company; DEM ASSOCIATES, INC., a California corproation; TOYZ RANCHO CORDOVA, LLC, a California Limited Liability Company; and ENYART INNOVATIONS, LLC, a California Limited Liability Company;<br><br>Plaintiffs,<br><br>v.<br><br>WIRELESS TOYZ, INC., a Delaware corporation; JSB ENTERPRISES, INC., a Michigan corproation; WIRELESS TOYZ FRANCHISE, LLC, a Michigan Limited Liability Company; JOE BARBAT, an individual; DAVID D. EBNER, an individual; NEAL YANOFSKY, an individual; RICHARD SIMTOB, an individual; JACK BARBAT, an individual; AND DOES 1 through 100, inclusive;<br><br>Defendants. | Case Number C 09-05091 JF (HRL)<br><br>ORDER[1] DENYING PLAINTIFFS' MOTION TO REMAND AND TRANSFERRING THE ACTION TO THE EASTERN DISTRICT OF MICHIGAN<br><br>[re: document nos. 8, 9, 10, 19] |

---

[1] This disposition is not designated for publication in the official reports.

# I. BACKGROUND

This action arises out of a franchise dispute. Defendant Wireless Toyz Franchise, LLC ("WTF"), a Michigan limited liability company with its principal place of business in Michigan, is a franchisor of Wireless Toyz cellular stores. Defendants Wireless Toyz, Inc. ("WTI"), a Delaware corporation with its principal place of business in Michigan, and JSB Enterprises, Inc. ("JSB")[2], are affiliates of WTF. Defendants Joe Barbat, David Ebner, Richard Simtob, Jack Barbat ("Individual Defendants") and Neal Yanofsky are past or present officers and directors of the business entity defendants. All of the Individual Defendants are residents of Michigan, and Yanofsky is a resident of Massachusetts. Plaintiffs Toyz, Inc., Antelope Toys, LLC, Wireless, LLC, DEM Associates, Inc., Toyz Rancho Cordova, LLC, and Enyart Innovations, LLC ("Plaintiffs") all are California-based business entities that entered into franchise agreements with Defendants.

### A. Factual Allegations[3]

The business concept of Wireless Toys is to provide consumers with a retail store at which they can purchase cellular phones from a variety of major carriers such as AT&T, Verizon, and Sprint. Declaration of Russ Enyart ("Enyart Decl.") ¶ 3. Early in 2003, Simtob allegedly e-mailed a Uniform Franchise Offering Circular ("UFOC") to one of Plaintiffs' principals, Russ Enyart. On March 26, 2004, Enyart Innovations, LLC executed the first franchise agreement at issue here. Complaint ¶ 30. A second franchise agreement was signed by Wireless, LLC on April 16, 2004. *Id.* ¶ 25. A third franchise operation with Toyz Rancho Cordova was created by

---

[2] In December 2007, JSB, a Michigan corporation with a principal place of business in Michigan, merged with WTI. WTI is the surviving entity. Declaration of Joe Barbat ¶ 3.

[3] Plaintiffs cite deposition testimony obtained in a case currently pending in Michigan, entitled *David Abbo et al. V. Wireless Toyz Franchise, LLC, et al.* Defendants point out that there is an active protective order in the *Abbo* case providing that documents and testimony produced in discovery must be treated as confidential and are to be used only for the purpose of the prosecution, defense or settlement of that case. Plaintiffs do not dispute the existence of the protective order. Accordingly, this Court will not consider allegations arising from discovery produced in the *Abbo* litigation except to the extent that the allegations are based upon statements of non-party witnesses, including Bernie Meara, Linda Daischendt, and Aaron Millar.

2

an agreement signed on January 10, 2005. *Id.* ¶ 28. Enyart was involved in the franchise agreements of both Wireless, LLC and Toyz Rancho Cordova. On March 2, 2005, Enyart created Toyz, LLC and signed an Area Development Agreement ("ADA") with WTF on March 2, 2005. *Id.* ¶ 24. Defendants assert that the franchise agreements and the ADA[4] were executed by WTF in Michigan, that Plaintiffs' principals traveled to Michigan to meet with WTF's agents, and that during the parties' telephonic negotiations WTF's agents were physically situated in Michigan. Joe Barbat Decl. ¶¶ 9-14. Plaintiffs assert that the first two franchise agreements were executed in California, though they acknowledge that the remainder were signed in Michigan. Supplemental Declaration of Russ Enyart ¶ 2 (indicating that in March 2004 Simtob traveled once to Sacramento and again a week later to Los Angeles to sign the franchise agreements with Enyart Innovations, LLC and Wireless, LLC, respectively). The ADA enabled a corporate entity controlled by Enyart to solicit other franchisees, in a defined region, in exchange for payment for any new franchise operation resulting from these efforts. Joe Barbat Decl. ¶ 9. After entering into the ADA with WTF, Enyart entered into three more Franchise Agreements – Antelope Toyz, LLC, executed two franchise agreements in April 2005 and DEM Associates, Inc. executed its franchise agreement in October 2005. Complaint ¶¶ 26-29.

Plaintiffs claim that Defendants intentionally made oral and written misrepresentations and omissions and that Plaintiffs relied upon these misrepresentations and omissions in entering into their franchise agreements. *Id.* ¶¶ 31-51, 105-106. In particular, the complaint alleges that the UFOCs materially overstated store revenue from merchandise sales; used misleading earnings figures from locations that were owned by persons and entities affiliated with WTI that did not pay royalties resulting in an overstatement of income; and failed to disclose the dramatic financial impact of what are known in the industry as "hits" and "charge backs."[5] Plaintiffs also

---

[4] The franchise agreements and ADA contain Michigan forum-selection provisions.

[5] Cellular phone stores often offer customers the incentive of a free or discounted cellular phone or other wireless products if the customer agrees to a multi-year service plan. These discounts are referred to as "hits." A "charge back" occurs when a customer cancels a previously purchased wireless service plan, resulting in the related carrier revoking the sales commission previously paid to the store.

3

claim that the UFOCs failed to disclose that many major carriers refused to allow franchisees to sell their phones because the carriers had their own stores in relatively close proximity and did not want to impair their own sales. Enyart Decl. ¶¶ 7-11; Randall Decl. ¶¶ 4-7. Defendants argue that the UFOCs contained language expressly cautioning Plaintiffs – in capital letters – that the gross historical revenue and performance figures did not reflect the costs of revenues, operating expenses, or other costs and expenses and that all such items would need to be deducted from the gross revenue figures to calculate net income or profit.

Plaintiffs also claim that they based their decision to enter into their franchise agreements upon pre-sale oral misrepresentations by the Individual Defendants including the following: (1) Joe Barbat told Enyart, John Randall, and Bill Rhinehart that annual profits per franchise would be significantly more than $50,000 per year; (2) Jack Barbat asserted to Russ Enyart and Kristin Enyart that each franchise could expect to start making a profit after selling about one-hundred phones per month and that the average profit for every subsequent hundred phones sold would be about $15,000; (3) Ebner stated to Russ Enyart that franchises can expect to be very profitable after the first six months; and (4) Simtob told John Randall [a member of Wireless, LLC] that his profits would be such that he would be able to pay off his investment in the Wireless Toyz franchise within a year. P. Opp to MTD at 5, citing Enyart Decl. ¶¶ 12-13, Randall, ¶¶ 2, 8.

Finally, Plaintiffs allege that the Individual Defendants engaged in a pattern of fraud in their handling of co-op advertising dollars and commissions. Complaint ¶ 83. When a customer enters into a wireless plan at a Toyz franchisee location, commissions are paid by the carrier to WTF. Plaintiffs claim that Defendants "intentionally refused to accurately track commissions and co-op revenue that should have remitted to franchisees, resulting in misappropriation of substantial funds from a Commissions Trust Account to WTI." Enyart Decl. ¶ 16, Randall Decl. ¶ 11.

**B. The Individual Defendants' Presence in California**

Joe Barbat has been employed by WTF from its inception to present and is its Chief Executive Officer. Affidavit of Joe Barbat ("Joe Barbat Aff.") ¶¶ 2-3. He did not meet with Enyart or anyone acting on behalf of Plaintiffs prior to the execution of the first franchise

4

Case Number C 09-05091 JF (HRL)
ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND TRANSFERRING THE ACTION TO THE EASTERN DISTRICT OF MICHIGAN
(JFLC1)

agreement, except possibly when Enyart traveled to Michigan to inquire about a franchise opportunity. *Id.* ¶ 4. After signing the first franchise agreement, Joe Barbat did travel to California on a few occasions, including to a convention in San Diego, to a convention in Palm Springs, and for a visit to Plaintiffs' stores after the stores already were operating. *Id.* ¶ 5.

Ebner was the Chief Financial Officer of WTF. During his eight years of employment at WTF, Ebner traveled to Los Angeles three times. He also met with Enyart once in Sacramento and again in San Francisco, but he never met or communicated with any of Plaintiffs' representatives prior to the signing of the first franchise agreement.

Simtob was employed by WTF from 2004-2008. Simtob Affidavit ¶ 3. He traveled to California an average of four times per year between 2004-2007. *Id.* ¶ 4. In 2004, he met with Enyart once at Enyart's place of business. *Id.* Simtob was present when Enyart signed his agreement in Sacramento and "when we found his site." *Id.*

Jack Barbat was an employee of WTF and became its vice president of operations. Jack Barbat Affidavit ¶ 3. He had no involvement with Enyart or Toyz, Inc., prior to the signing of the first franchise agreement. *Id.* ¶ 4. Jack Barbat trained Enyart in Michigan at the Wireless Toyz training site and attended the grand opening of Enyart's first store in California "on behalf of the corporation." *Id.* Jack Barbat asserts that he was present in California no more than once or twice a year in 2004, 2005, and 2006. *Id.*

**D. Procedural History**

Plaintiffs filed the operative complaint in the Santa Clara Superior Court on August, 26, 2009, alleging thirteen claims for relief: (1) intentional fraud against all Defendants; (2) negligent misrepresentation against all Defendants; (3) violation of the Michigan Franchise Investment Law ("MFIL") against WTF; (4) breach of written contract, by Plaintiff Toyz, LLC against WTF and Does 1 through 50 and 70 through 80; (5) breach of written contract, by Plaintiff Antelope Toyz, LLC, Wireless, LLC, Toyz Rancho Cordova, LCC, Enyart Innovations, LLC, and Dem Associates, In. against WTF and Does 1 through 50; (6) breach of the implied contract of good faith and fair dealing, by Plaintiff Toyz, LLC against WTF and Does 1 through 50 and 70 through 80; (7) breach of the implied contract of good faith and fair dealing, by Plaintiffs

5

Antelope Toyz, LLC, Wireless, LLC, Toyz Rancho Cordova, LLC, Enyart Innovations, LLC, and Dem Associates, Inc. against WTF and Does 1 through 50 and 70-80; (8) conversion against all Defendants; (9) accounting against all Defendants; (10) violation of § 445.1508 of the MFIL against WTF and Does 1-30; (11) violation of § 445.1532 of the MFIL against WTF, WTI, Joe Barbat, Ebner, Simtob, Yanofsky, and Does 1 through 30; (12) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. against all Defendants; and (13) violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c).

Plaintiffs served Simtob personally on September 7, 2009, and the remaining Defendants received the summons and complaint on various dates ranging from September 3 through September 30. On September 4, 2009, Steven Cohen, counsel for the Individual Defendants, telephoned Plaintiffs' counsel, John Gorman, to address possible dismissal of the complaint as to his clients. On September 9, 2009, Cohen mailed a letter to Gorman asserting that none of his clients had been served with the complaint, but that he was "aware of the complaint having been filed against Wireless Toyz." Declaration of John C. Gorman, Ex. A. On October 26, 2009, Defendants filed their notice of removal.

Plaintiffs now move to remand, contending that the removal was procedurally defective because the notice of removal was filed after the thirty-day period allowed by 28 U.S.C. § 1446(b) had expired. The Individual Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, or in the alternative, to transfer to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). WTF, WTI, JSB, ("Corporate Defendants") and Yanofsky also move to transfer to the Eastern District of Michigan.

### III. MOTION TO REMAND

28 U.S.C. § 1446(b) states that "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." "The time limit is mandatory and a timely objection to a late petition will defeat removal." *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212-13 (1980), citing *American Fire*

6

*& Casualty Co. v. Finn,* 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951.

The parties agree that Defendants filed their notice of removal on October 26, 2009. However, they disagree as to whether this date is within the thirty-day period provided by 28 U.S.C. § 1446(b).[6] Plaintiffs urge the Court to adopt the "first-served" rule and calculate the thirty-days from September 7, 2009, the date the first defendant (Simtob) was personally served. Defendants contend that the Court should follow the "last-served" rule and calculate the thirty-day period from September 30, the date the last defendant (Joe Barbat) was served. There is no controlling Ninth Circuit authority. *United Steel v. Shell Oil Co.,* 549 F.3d 1204, 1208 (9th Cir. 2008) (declining to rule on the issue but noting that "[i]n cases with multiple defendants, there is a split in authority-unresolved in this Circuit-on whether the thirty-day period to file, or join in, a notice of removal begins to run on the day of service on the first-served or last-served defendant"), citing *United Computer Systems, Inc. v. AT & T Corp.,* 298 F.3d 756, 763 n. 4 (9th Cir.2002) (declining to adopt the first-served rule or the last-served rule).

District courts within the circuit are split. A number of them have adopted the first-served rule, "[relying] primarily upon three reasons...1) that it follows logically from the unanimity rule, 2) that forum selection should be resolved as early as possible, and 3) that removal statutes must be construed narrowly." *McAnnally Enterprises, Inc. v. McAnally*, 107 F.Supp.2d 1223, 1227 (C.D. Cal. 2000); *Maysey v. CraveOnline Media, LLC,* No. CV 09-1364-PHX-JAT, 2009 WL 3740737, *2-3 (D. Ariz. Nov. 5, 2009) (stating that "a majority of the district courts in the Ninth Circuit apply the 'first-served rule,' holding that a notice of removal is timely only if filed within thirty days after service of the complaint on the first defendant" and applying the first-served rule based upon the court's determination that there was "no indication of 'gamesmanship' here or of Plaintiff's 'bad faith effort to prevent removal'"); *Morgan v. Asbestos Defendants*, No. C 02-05761 WHA, 2003 WL 945987, *2 (N.D. Cal. 2003) (concluding that the first-served rule is "consistent with the tenet that the removal statute is to be

---

[6] It is undisputed that Plaintiffs' motion to remand was timely pursuant to 28 U.S.C. § 1447(c). *Id.* (providing a thirty day period within which to file a motion to remand after the filing of a notice of removal).

7

Case Number C 09-05091 JF (HRL)
ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND TRANSFERRING THE ACTION TO THE EASTERN DISTRICT OF MICHIGAN
(JFLC1)

strictly construed in favor of remand" and "promotes the early determination of the forum in which litigation is to take place," while noting that the rule "need not be applied when an inequitable result would follow").

However, other courts have held that the first-served rule is "unfair [because it] deprive[s] later-served defendants an equal opportunity to remove" and noted that the last-served rule represents the current national trend. *Glacier Water Company v. Earl*, No. C08-1705RSL, 2009 WL 586128, *4 (W.D. Wash. Mar. 5. 2009) (holding that "statutory construction mandates adoption of the 'last-served' rule...if Congress intended the 'removal period to commence upon service of the first defendant, it could have easily so provided.'"); *Lewis v. City of Fresno*, 627 F.Supp.2d 1179, 1183 (E.D. Cal. 2008) ("the caselaw indicates a recent trend in favor of the "last-served" rule since the Supreme Court's decision in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999)); *Coleman v. Assurant, Inc.,* 463 F.Supp.2d 1164, 1168 (D. Nev. 2006) ("the current movement in this Circuit, and the nation, [is] to follow the later-served defendant"); *Bonner v. Fuji Photo Film,* 461 F.Supp.2d 1112 (N.D. Cal. 2006) (applying later-served rule).

This Court finds the reasoning of the second line of cases more compelling. First, the last-served rule is more consistent with the Supreme Court's holding in *Murphy Bros. Id.* at 347-348. In *Murphy Bros.*, the Supreme Court held that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id. Murphy Bros.*"read Congress' provisions for removal in light of a bedrock principle: An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Id.* It follows logically from *Murphy Bros* that if a defendant is not obliged to engage in litigation unless notified of the action by formal process, that defendant cannot be deprived of its right to file a notice of removal within the thirty-day period provided by § 1446(b) before it has been served. *Marano Enters. of Kansas v. Z-Teca Rests., Inc.,* 254 F.3d 753, 756-57 (8th Cir. 2001), citing 16 James Wm. Moore *et al*., Moore's

Federal Practice § 107.30[3][a][I], at 107-163 (3d ed. 2000) ("[I]t is likely that the Court may decide that the later served defendants may not have their removal right compromised before they are served, and that they ought to have the opportunity to persuade the earlier served defendants to join the notice of removal. Thus, the fairness approach may well, and should, supercede [sic] the unanimity rule.").

*Second*, the rule prevents "opportunistic pleading by the plaintiff." *Bonner*, 461 F.Supp.2d at 1118. A plaintiff may alleviate any uncertainty as to the forum in which litigation will take place simply by serving defendants contemporaneously. Third, this Court agrees with the district court in *Glacier Water Company* that "statutory construction mandates adoption of the 'last-served' rule...[I]f Congress intended the 'removal period to commence upon service of the first defendant, it could have easily so provided." *Id.* at *4. Finally, the Court finds the most commonly cited reason for adopting the first-served rule – the unanimity requirement – unpersuasive. It is entirely possible that a first-served defendant might not remove a case, not because it necessarily would refuse a request to do so from a latter-served co-defendant, but because it is equally amenable to appearing in either state or federal court. Because the last-served defendant in the instant case was not served until September 30, 2009,[7] Defendants' notice of removal was timely. The motion to remand will be denied.

## II. MOTION TO DISMISS

**A. Legal Standard**

When a nonresident defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction is proper. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 839 (9th Cir. 1986). In the context of a motion to dismiss based upon

---

[7] Counsel for the Individual Defendants, Steven Z. Cohen, engaged in a telephone conversation with Plaintiffs' attorney, John C. Gorman, on September 4, 2009. Gorman Decl., Ex. A. In a letter dated September 9, 2009, Cohen memorialized the earlier conversation in writing indicating that he would inform Gorman when he obtained "permission to accept service on behalf of" Joe Barabt, Ebner, Simtob, and Jack Barbat. While it is likely that Joe Barbat was aware of the instant action prior to the date he was formally served, "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.*, 526 U.S. at 347.

9

Case Number C 09-05091 JF (HRL)
ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND TRANSFERRING THE ACTION TO THE EASTERN DISTRICT OF MICHIGAN
(JFLC1)

pleadings and affidavits, the plaintiff may meet this burden by making a prima facie showing of personal jurisdiction. *Metropolitan Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990); Data Disc, 557 F.2d at 1285. In determining whether the plaintiff has made a prima facie showing, documents submitted by the plaintiff are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. *Id.*

A district court sitting in California may exercise personal jurisdiction over a non-resident defendant if the defendant has "minimum contacts" with California such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1287 (9th Cir. 1977), citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). "If the nonresident defendant's contacts within [California] are 'substantial' or 'continuous and systematic,'" the defendant is subject to general jurisdiction in California even if the cause of action is not related to the defendant's activities within the state. *Data Disc*, 557 F.2d at 1287. If the defendant's activities within the state are not so pervasive as to subject it to general jurisdiction, it may be subject to specific jurisdiction. The Court may subject a defendant to specific jurisdiction if the defendant's contacts with the forum satisfy the following three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004), citing *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987).

**B. Discussion**

Because it is undisputed that the Individual Defendants are not subject to this Court's general jurisdiction, the only issue to be determined is whether specific jurisdiction exists. The first prong of the test for specific jurisdiction requires that the plaintiff establish purposeful availment of or purposeful direction toward the forum state. The phrase "purposeful availment"

10

often is used to include both purposeful availment and purposeful direction, which are two distinct concepts. *Schwarzenegger*, 374 F.3d at 802. A purposeful direction analysis "is most often used in suits sounding in tort." *Id.,* citing *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002) and *Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995) (noting that "we apply different purposeful availment tests to contract and tort cases"). While the instant action arises from a series of franchise agreements, Plaintiffs' claims for relief against the Individual Defendants are based upon alleged intentional written and oral misrepresentations sounding in tort. Demonstration of purposeful direction "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803, *citing Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774-75 (1984). A court evaluates purposeful direction under the three-part "effects" test established in *Calder v. Jones*, 465 U.S. 783 (1984), requiring "that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803, citing *Dole Food Co., Inc.* at 1111.

"Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prod. Inc.,* 885 F.2d 515, 520 (9th Cir. 1989). "However, the corporate form may be ignored in two cases: (1) where the corporation is the agent or alter ego of the individual defendant, *Flynt Distrib. Co. v. Harvey,* 734 F.2d 1389, 1393 (9th Cir. 1984); or (2) by virtue of the individual's control of, and direct participation in the alleged activities, *Transgo Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 10001, 1021 (9th Cir. 1985)." *Wolf Designs, Inc. v. DHR & Co.*, 322 F.Supp.2d 1065, 1072 (C.D. Cal. 2004).

"A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 734 (9th Cir.1999) (corporate officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort"). "However, mere knowledge of tortious

11

conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation absent other 'unreasonable participation' in the unlawful conduct by the individual." *Wolf Designs*, 322 F.Supp.2d at 1072, citing *PMC, Inc. v. Kadisha,* 78 Cal.App.4th 1368, 1389, 93 Cal.Rptr.2d 663 (2d Dist. 2000). "Cases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, ... or the 'central figure' in the challenged corporate activity." *Davis,* 885 F.2d at 524 (citations omitted). Because Plaintiffs do not allege an alter ego theory, the Court must determine if the Individual Defendants played a primary role in the alleged wrongdoing intentionally directed at Plaintiffs in California.

**1. Minimum Contacts**

Plaintiffs allege generally that the Individual Defendants intentionally misrepresented and deliberately failed to disclose material facts in the UFOC, in order to induce Plaintiffs into entering franchise agreements with WTF. Plaintiffs do not distinguish among the Individual Defendants or identify the particular actions or omissions for which any particular Individual Defendant allegedly is responsible. The Individual Defendants argue that to the extent Plaintiffs allege that the UFOC itself contains misrepresentations and omissions that induced Plaintiffs to enter into franchise agreements, Joe Barbat, Jack Barbat, and Richard Simtob had little participation in the creation of that document. The Individual Defendants also contend that Ebner's involvement in the creation of the UFOC was secondary to information received from WTF's accountants and point of sale records. The Court agrees that Plaintiffs' generalized allegation of the Individual Defendants' involvement in the misrepresentations and omissions contained in the UFOC is insufficient to establish purposeful availment.

The complaint also alleges that the Individual Defendants, "at various relevant times, have exercised control over the Commissions Trust Account ("CTA"), and managed and maintained it for the alleged benefit of its franchisees." Complaint ¶ 79. While allegations of intentional misappropriation of CTA funds owed to Plaintiffs arguably concern intentional acts expressly aimed at the forum state causing harm that the defendants know is likely to be suffered in the forum state, the complaint once again lacks sufficient specificity to establish personal

12

jurisdiction. Even viewing the complaint in the light most favorable to Plaintiffs, the vague, blanket allegation that the Individual Defendants controlled the CTA at "various relevant times" does not establish purposeful direction by any specific Individual Defendant.

Plaintiffs do allege specific oral misrepresentations by certain Individual Defendants. Enyart Decl. ¶ 12 (stating that: (1) Joe Barbat told Enyart John Randall and Bill Rhinehart that they would earn a return on their investment of "significantly more than $50,000 per year; (2) Jack Barbat told Enyart and Kristin Enyart that after selling one-hundred phones a franchise could expect to start making a profit and that the average profit after each hundred phones sold was approximately $15,000; and (3) Ebner represented that WTF franchises typically become very profitable after the first six months of opening); Randall Decl. ¶ 8(b) (stating that Simtob told Randall that he would be able to pay off his investment in his franchise within a year of opening). However, Plaintiffs do not state whether these alleged misrepresentations were made in Michigan or California or whether they were made in person or over the telephone. It is true that these misrepresentations allegedly were directed knowingly toward California-based franchisees, making the location of their origin irrelevant under the *Calder* effects test. That said, only one of the alleged oral misrepresentations – an alleged statement made by Joe Barbat to Enyart on March 2, 2004 – was made prior to the date Enyart entered into a franchise agreement. Plaintiffs do not explain how Ebner or Jack Barbat could have caused them harm in California given that the alleged statements of these individuals were made with knowledge that Enyart already had executed the franchise agreement.

**2. Reasonableness**

Even assuming that the first two prongs of the test have been met, the exercise of personal jurisdiction still must be reasonable. The Ninth Circuit has articulated seven factors that are relevant to this determination: "(1) the extent of the [defendant's] purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the

13

Case Number C 09-05091 JF (HRL)
ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND TRANSFERRING THE ACTION TO THE EASTERN DISTRICT OF MICHIGAN
(JFLC1)

existence of an alternate forum." *Callaway Golf Corp. v. Royal Canadian Golf Ass'n.,* 125 F.Supp.2d 1194, 1205 (9th Cir. 2000).

### a. Extent of the Individual Defendants' purposeful injection

Plaintiffs contend that the Individual Defendants' misrepresentations were purposefully directed toward Plaintiffs in California. Plaintiffs allege that Simtob, at Enyart's request, sent Enyart a website link to the UFOC, knowing that Enyart planned to open a California franchise. Plaintiffs also claim that the Individual Defendants purposefully injected themselves by misappropriating CTA funds, knowingly causing harm to Plaintiffs in California. However, as discussed above, Plaintiffs' allegations are adequate only as to single oral statements by Joe Barbat and Simtob. "Our determination that defendants purposefully availed themselves of California law does not obviate the need to consider the degree of their intrusion." *Ziegler v. Indian River County*, 64 F.3d 470, 475 (9th Cir. 1995). "Even if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong]." *Core-Vent Corp.,* 11 F.3d at 1488 (brackets in original), quoting *Insurance Company of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1271 (9th Cir.1981). *But see Roth*, 942 F.2d at 623 (degree of interjection analysis and purposeful availment inquiry redundant). In this case, Plaintiffs' specific allegations reflect extremely limited purposeful injection by the Individual Defendants.

### b. Burden on the Defendants in litigating in the forum

"Where burdens are equal, this factor tips in favor of the defendants because the law of personal jurisdiction is 'primary concerned with the defendant's burden.'" *Ziegler v. Indian River County*, 64 F.3d 470, 475 (9th Cir. 1995) (citations omitted). In this action, the burden upon Defendants to litigate in California is relatively equal to that which would be imposed on Plaintiffs if the matter were to be litigated in Michigan. The record reflects that the Individual Defendants have traveled to California on occasion for business and that Plaintiffs' representatives have traveled to Michigan in connection with the business relationship at issue in the instant action. Thus, with the burdens equal, this factor tips in favor of the Individual

14

Case Number C 09-05091 JF (HRL)
ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND TRANSFERRING THE ACTION TO THE EASTERN DISTRICT OF MICHIGAN
(JFLC1)

Defendants.[8]

### c. Extent of conflict with the sovereignty of the Defendants' state

It is undisputed that there would be no conflict with the sovereignty of Michigan if the Court were to exercise personal jurisdiction over the Individual Defendants.

### d. California's interest in adjudicating the dispute

California undoubtedly has a strong interest in adjudicating the instant dispute. As Plaintiffs point out, California's franchise laws effectively void the forum-selection clause in a franchise agreement in order to protect California franchisees. Cal. Bus. & Prof. Code § 20040.5; *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498, n. 15 (9th Cir. 2000) ("[t]he legislative history of § 20040.5 provides further evidence that the statutory prohibition against such forum selection clauses reflects a strong state public policy interest"). In addition, California always has an interest when the alleged injuries to a plaintiff occur in California. *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986).

### e. Most efficient judicial resolution of the controversy

"In evaluating this factor, we...look[] primarily at where the witnesses and the evidence are likely to be located." *Core-Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1489 (9th Cir. 1993) (citation omitted). Plaintiffs' party witnesses and business records are located in California, while the Individual Defendants' party witnesses and business records are in Michigan. Plaintiffs also claim that much of the evidence related to the allegation that the Individual Defendants misappropriated funds from the CTA is in the possession of the wireless carriers that participated in the programs, most of which are headquartered neither in California nor in Michigan. Plaintiffs "presume" that the evidence related to the funds payable to California franchise stores is located at the California office locations of the respective carriers.

---

[8] Plaintiffs claim that Individual Defendants and Corporate Defendants have retained the same California-based law firm and share the same interests in defending this action, and that the Individual Defendants are being defended under Toyz's D&O insurance policy at no cost to themselves. Gorman Decl. ¶ 2. However, the Individual Defendants inform the Court that the D&O insurance policy coverage of the Individual Defendants still is in dispute and that the participation of Michigan counsel is necessary because Michigan law governs some if not all of Plaintiffs' claims.

15

Case Number C 09-05091 JF (HRL)
ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND TRANSFERRING THE ACTION TO THE EASTERN DISTRICT OF MICHIGAN
(JFLC1)

In response, the Individual Defendants note that the majority of third-party witnesses reside in Michigan and are not subject to the subpoena power of a California federal court. The Individual Defendants identify specifically several current and former WTF employees, including witnesses whose deposition testimony in the *Abbo* litigation is cited by Plaintiffs in their complaint and opposition papers, as well as persons employed by accounting firms and banks that performed work for WTF.[9] This factor appears to weigh strongly in favor of a Michigan forum.

### f. Importance of the forum to Plaintiffs' interest in convenient and effective relief

It is undisputed that it would be more convenient for Plaintiffs, California-based business entities, to litigate the instant action in California. Still, "neither the Supreme Court nor our court has given much weight to inconvenience to the plaintiff." *Ziegler*, 64 F.3d at 476, *citing Core-Vent*, 11 F.3d at 1490.

### g. Existence of an alternative forum

Plaintiffs can obtain the same relief in Michigan that they could in this Court.

Weighing all of the factors together, the Court concludes that despite California's strong policy interest in adjudicating disputes involving franchise agreements, the exercise of personal jurisdiction over the Individual Defendants in California would be unreasonable given the minimal extent to which the Individual Defendants have injected themselves into the forum and the greater judicial efficiency of having the matter heard in a forum where the majority of third-party witnesses are located. Accordingly, the Court concludes that it lacks personal jurisdiction over the Individual Defendants. As discussed below, the Court also concludes that transfer of the action to Michigan, rather than outright dismissal, is the appropriate remedy.

---

[9] These non-party witnesses include accountant Joseph Abro, accountants at Plante & Moran, accountants at Ernst & Young, LaSalle Bank employees Phil Kapanowski and Steve Henson, Bank of America employee Mark Kavka, and Insurance Agent Jenny Moffet, all of whom are residents of Michigan.

## IV. Motion to Transfer

All Defendants move to transfer the instant case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

**A. Individual Defendants' motion to transfer in the alternative**

The Individual Defendants need not establish that transfer of the act would be convenient because as to them this Court presently has only two options: (1) dismiss the case for lack of personal jurisdiction, or (2) transfer venue. When the district court lacks personal jurisdiction over Individual Defendants, as it does in the instant case, transfer pursuant to 28 U.S.C. § 1406(a) is appropriate. *See, e.g., Nelson v. International Paint Co.,* 716 F.2d 640, 643 (9th Cir. 1983). Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Plaintiffs had notice that this case might be transferred and have had an opportunity to be heard as to both personal jurisdiction and venue. Accordingly, the Court considers the Individual Defendants' motion to transfer pursuant to 28 U.S.C. § 1406(a). This Court has jurisdiction to transfer this case to a different district because it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. *Hernandez v. Campbell*, 204 F.3d 861, 865 n.6 (9th Cir. 2000) ("Section 1406(a) only allows transfer where the first court has subject matter jurisdiction over the action.").

The Court concludes that it is in the interest of justice to transfer the instant case, rather than dismiss it, because Plaintiffs' arguments that the Court has personal jurisdiction over Individual Defendants were not frivolous, and Plaintiffs' claims in the instant case are potentially meritorious. The Eastern District of Michigan is an appropriate venue pursuant to 28 U.S.C. § 1391(a). That district, where the great majority if not all of the franchise agreements were executed, is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2).

17

Case Number C 09-05091 JF (HRL)
ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND TRANSFERRING THE ACTION TO THE EASTERN DISTRICT OF MICHIGAN
(JFLC1)

### B. Corporate Defendants and Yanofsky[10]

In the Ninth Circuit, a motion for transfer pursuant to § 1404(a) lies within the discretion of the district court and depends on the facts of each particular case. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000). The Court must consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Such factors may include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any. *Jones*, 211 F.3d at 498-99. *See also Micron Tech., Inc. v. Mosaid Techs., Inc.,* 518 F.3d 897, 904-05. The moving party bears the burden of showing that transfer is appropriate. *Jones*, 211 F.3d at 499.

On a § 1404(a) motion, a plaintiff's choice of forum is accorded substantial weight, and a court will not transfer a case unless the "convenience" and "justice" factors tip strongly in favor of the transfer. *Florens Container v. Cho Yang Shipping,* 245 F.Supp.2d 1086, 1092 (N.D. Cal. 2002), citing *Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1317 (9th Cir.1985); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). While the Court is mindful of the substantial weight accorded to Plaintiff's choice of forum, the remaining factors in this case tip strongly in favor of transfer as to the remaining Defendants. First, as discussed above, the Court lacks personal jurisdiction over the Individual Defendants, and transfer to the

---

[10] Plaintiffs do not direct any of their argument against transfer toward Yanofsky in particular other than stating that Yanofsky, a Massachusetts resident, has failed to demonstrate how California was less convenient for him than Michigan. Yanofsky requests that the Court take judicial notice of the fact that Michigan is closer to Massachusetts than California. The Court will take judicial notice of this fact. The Court's § 1404(a) analysis with respect to the Corporate Defendants applies equally to Yanofsky.

18

Eastern District of Michigan is appropriate. If this Court were to retain the case as to the Corporate Defendants and Yanofsky, Plaintiffs would be required to litigate two separate actions involving the same claims and transactions, one in California and one in Michigan.

Second, as discussed previously, the majority of the non-party material witnesses in this action reside in Michigan and are beyond this Court's subpoena power. Fed.R.Civ.P. 45(b)(2) (with rare exception, the Court's subpoena power only extends outside of this district if the place of service is "within 100 miles of the place specified for the deposition, hearing, trial, production or inspection.") The Corporate Defendants have identified a number of these employees specifically, providing the Court with detailed information about the relevance and import of their testimony (for example, Ali Koumaiha "who participated in extracting data from Wireless Toyz's computer system and participated in preparing the earnings and performance figures in the UFOC"). Dkt. No. 48 at 5-7. The Corporate Defendants also identify other Michigan residents who Plaintiffs are likely to call as witnesses, such as Bernie O'Meara, Aaron Millar and Linda Daischandt, all former employees of the Corporate Defendants whose testimony in the *Abbo* litigation is cited in Plaintiffs' complaint and opposition papers.

Finally, Defendants urge the Court to transfer the instant action because the franchise agreements contain a Michigan forum-selection clause. Plaintiffs properly rely upon Cal. Bus. & Prof. Code § 20040.5, which provides that "[a] provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." "While the presence of a forum selection clause is a 'significant factor' in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing." *Jones*, 211 F.3d at 499; *see contra Stewart Org. V. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (holding that § 1404(a) governed a forum non conveniens motion to transfer based upon a forum selection clause despite the current forum's public policy that "may refuse to enforce" such provisions). Given California's strong public policy in favor of providing a forum to California franchisees, this factor favors Plaintiffs.

19

Case Number C 09-05091 JF (HRL)
ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND TRANSFERRING THE ACTION TO THE EASTERN DISTRICT OF MICHIGAN
(JFLC1)

Taking all of the relevant factors into consideration,[11] the Court concludes that the "convenience" and "justice" factors tip strongly in favor of transferring the entirety of the instant action to the Eastern District of Michigan.

### IV. ORDER

Good cause therefor appearing, Plaintiffs' motion to remand is DENIED, and the instant action is hereby TRANSFERRED to the United States District Court for the Eastern District of Michigan. The Clerk shall transmit the file to the transferee court and terminate the action in this Court.

**IT IS SO ORDERED.**

DATED: 1/25/10

_____
JEREMY FOGEL
United States District Judge

---

[11] The remaining factors appear to favor the Corporate Defendants. Most if not all of the franchise agreements in dispute were executed in Michigan, and the telephonic negotiations occurred with Plaintiffs in California and Defendants in Michigan. Joe Barbat Decl. ¶¶ 9-14, Enyart Supplemental Decl. ¶ 2. The complaint includes three Michigan statutory claims, one California statutory claim, and one federal statutory claim, as well as eight common law claims, with the result that neither court is substantially more familiar with the applicable law. Complaint ¶¶ 103-185. The parties' respective contacts with the forum are relatively balanced. The Corporate Defendants occasionally sent employees on WTF related trips to California, while Plaintiffs sent representatives to Michigan to execute franchise agreements and gain training. The ease of access to sources of proof also is relatively balanced, as the Corporate Defendants' books and records are located in Michigan, and Plaintiff's books and records are located in California.